J-S47019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAY THOMAS | : | |
| | : | |
| Appellant | : | No. 591 EDA 2025 |

Appeal from the Judgment of Sentence Entered September 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006285-2023

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY OLSON, J.:                            **FILED MAY 29, 2026**

Appellant, Jay Thomas, appeals from the judgment of sentence entered on September 26, 2024, following his bench trial convictions for three firearms violations.[1]  Upon review, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> On or about August 22, 2023, at around 7:25 p.m., Philadelphia Police Officers Kevin Semonelle and Peter Sztenderowicz were on patrol in a marked police patrol vehicle on the 5300 block of Market Street.  At that time, Officer Semonelle observed a white Buick Lacrosse with tinted windows and [a] temporary license plate[].  The officers conducted a check on the license plate[], but no records were found.  The officers activated their overhead lights to initiate an investigation into the Buick.  As the officers signaled for the vehicle to pull over, the driver initially veered slightly to the right, appearing to comply with the [requested

---

[1]   18 Pa.C.S.A. §§ 6105 (persons not to possess a firearm), 6106(a)(1) (firearms not to be carried without a license), and 6108 (carrying a firearm on public streets in Philadelphia).

traffic] stop, but then continued traveling eastbound on Market Street.

The officers continued on Market Street until the driver of the vehicle attempted to turn north onto 53rd Street. A [proceeding] vehicle with the right of way was cut off by the Buick in which the [Appellant] was a passenger, resulting in a collision with the rear passenger side of the Buick. Immediately following the crash, [Appellant] and another male exited the vehicle and began running on foot northbound on 53rd Street. The front passenger[, Appellant,] was apprehended by backup officers at the corner of 53rd and Arch Street. Officer Semonelle observed [Appellant] clutch his waistband and underhand throw[,] what was later identified as a black firearm[,] into an alleyway as he continued to flee officers.

Officer Semonelle continued to chase [Appellant] as he ran down the next alleyway, jumped over a fence and ran westbound between two houses. [Appellant] then ran into another alleyway at which point Officer Semonelle lost sight of him. Officer Semonelle recovered the black firearm from the alleyway and placed it on a property receipt. Officer Sztenderowicz circled the block in the marked patrol vehicle [and turned] onto North Peach Street where he observed [Appellant] running northbound onto North Peach Street. Officer Sztenderowicz exited the patrol vehicle giving [Appellant] commands to stop, but [Appellant] continued to flee. [Appellant] was [thereafter] apprehended by Officer Sztenderowicz following a brief chase.

On or about August 22, 2023, [Appellant] was arrested and charged with [the aforementioned crimes]. [Appellant] filed a motion to suppress on February 5, 2024. The content of the motion was stipulated [] by the Commonwealth and the motion was withdrawn.

A bench trial was held on March 5, 2024. [The trial] court entered a verdict of guilty [as to all of the crimes] on the same date[.] On July 1, 2024, [Appellant] filed a motion to conduct [an] independent forensic analysis. [The trial] court sentenced [Appellant] on September 26, 2024, to three (3) to six (6) years of [] incarceration with a concurrent sentence of seven (7) years of probation[.] At his sentencing hearing, [Appellant] made a motion for extraordinary relief for a new trial due to [alleged] newly discovered DNA evidence. That motion was denied on the

same date. [Appellant] filed a post-sentence motion on October 7, 2024, which was denied by operation of law.

Trial Court Opinion, 6/12/2025, at 1-2 (headings, superfluous capitalization, and record citations omitted). This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

A. Did the lower court err where the [evidence offered in support of each offense contested] at trial was insufficient where the Commonwealth did not [prove] that [Appellant] possessed the firearm later recovered by police from an alleyway?

B. Did the court abuse its discretion where the evidence weighs in favor of concluding that [the] testimony of Officer Semonelle could not actually determine which of the two men running side

_____

[2] As mentioned, Appellant was sentenced on September 26, 2024, and he filed a timely post-sentence motion on October 7, 2025. A trial court has 120 days to decide a post-sentence motion, and if it fails to decide the motion within that period, the motion is deemed denied by operation of law. **See** Pa.R.Crim.P. 720(B)(3)(a). When the motion is denied by operation of law, the clerk of courts shall enter a denial on behalf of the trial court and serve copies on the parties. **See** Pa.R.Crim.P. 720(B)(3)(c). The notice of appeal shall be filed within 30 days of the entry of the order denying the motion by operation of law. **See** Pa.R.Crim.P. 720(A)(2)(b). Here, the 120-day period for a decision on Appellant's post-sentence motion expired on February 4, 2025. However, the clerk of courts failed to enter an order deeming the motion denied until 20 days later, or 140 days after filing the post-sentence motion, on February 24, 2025. A notice of appeal shall be filed within 30 days of the entry of the order deciding a timely post-sentence motion. **See** Pa.R.Crim.P. 720(A)(2)(a). Appellant filed a notice of appeal on February 26, 2025, two days after the order deeming the post-sentence motion denied and within 30 days of the date that the post-sentence motion should have been denied by operation of law. As such, we deem the appeal timely. Moreover, this Court has held that a court breakdown occurs when the trial court clerk fails to enter an order deeming a post-sentence motion denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(c). **See Commonwealth v. Patterson**, 940 A.2d 493, 498-499 (Pa. Super. 2007) (citation omitted). For all of the foregoing reasons, Appellant's appeal is timely. Finally, we note that both Appellant and the trial court complied with Pa.R.A.P. 1925. On June 12, 2025, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

by side [] possess[ed] the firearm and the video evidence presented is unclear as to which of the two men [threw] the firearm?

Appellant's Brief at 4 (complete capitalization and suggested answers omitted).

In his first issue presented, Appellant asserts that the Commonwealth failed to present sufficient evidence that he possessed the recovered firearm at issue to support his three firearm convictions. *Id.* at 11-14. Appellant contends that he "got out of a vehicle along with another individual and those two individuals start[ed] running down the street together." *Id.* at 13. Appellant suggests that police body camera footage shows "the individuals were side by side instead of 10 feet apart" as Officer Semonelle testified and, as such, "Appellant proffers that Officer Semonelle could not have observed Appellant throw a firearm into an alleyway." *Id.* at 14.

We adhere to the following legal precepts:

Our standard of review in a sufficiency of the evidence challenge is to determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth as the verdict-winner. The trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (internal citations omitted).

"A person who has been convicted of an [enumerated] offense … shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a)(1). "[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third[-]degree". 18 Pa.C.S.A. § 6106(a)(1). "No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless [] such person is licensed to carry a firearm[.]" 18 Pa.C.S.A. § 6108. Here, Appellant stipulated that the firearm operated properly, that (due to a prior conviction) he was prohibited from carrying a firearm, and he did not have a firearms license. Appellant's Brief at 8; *see also* Trial Court Opinion, 6/12/2025/, at 7 ("It is undisputed that [Appellant] was convicted of an enumerated offense prohibiting him from carrying a firearm.").

Instead, Appellant challenges his constructive possession of the firearm in question. This Court has stated:

> [When a defendant] was not in physical possession of the contraband, the Commonwealth [is] required to establish that he had constructive possession of the seized item[] to support his convictions.
>
> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have

> defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> Additionally, it is possible for two people to have joint constructive possession of an item of contraband.

*Hopkins*, 67 A.3d at 821 (internal citations omitted). "[A]lthough mere presence at a crime scene cannot alone sustain a conviction for possession of contraband[,] a [fact finder] need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt." *Commonwealth v. Vargas*, 108 A.3d 858, 869 (Pa. Super. 2014) (internal quotation marks and citation omitted); *see also Commonwealth v. Mann*, 820 A.2d 788, 793 (Pa. Super. 2003) (sufficient evidence to support firearm conviction where Mann "was seen throwing a handgun into a vacant lot by police, and the handgun thrown into the vacant lot was the same gun used in the shooting of the deceased."); *see also In re R.N.*, 951 A.2d 363, 370 (Pa. Super. 2008) (officer "testified that he saw [R.N.] throw a metal object from the passenger-side window of the vehicle in which he was riding, and that [the officer was] no more than ten feet from the vehicle when he witnessed it. Shortly after [] arrest[ing R.N.], [police] recovered a loaded handgun [and n]o other metal objects were found in the vicinity that could have been what [police] saw thrown from the window.") (record citations omitted)

Here, the trial court determined:

> [D]uring [Appellant's] trial, [Philadelphia Police Department] Officer Kevin Semonelle testified that he saw [Appellant] throw a

firearm in an underhand motion into an alleyway while he ran away from police. Officer Semonelle retrieved the firearm from the alleyway where he saw [Appellant] throw it and placed it on a property receipt. Further, [the trial c]ourt reviewed Officer Semonelle's body [camera video footage] at regular speed and again at slow speed before determining that [Appellant] was seen throwing an object from his waistband though it [was] unclear in the video what he was throwing. After the item was thrown into the alleyway, Officer Semonelle retrieved the firearm from the same alleyway.

Trial Court Opinion, 6/12/2025/, at 7-8. As such, the trial court determined that Appellant was in constructive possession of the recovered firearm, that he was ineligible to carry a firearm due to a previous conviction and lack of a valid firearm license, and that Appellant carried the firearm on the public streets of Philadelphia. *Id.* Accordingly, the trial court found the Commonwealth presented sufficient evidence to support all three of Appellant's firearm convictions. *Id.*

Viewing the totality of the facts, in the light most favorable to the Commonwealth as required, we agree with the trial court's assessment that Appellant had constructive possession of the discarded and recovered firearm. In fact, the evidence supports a finding that Appellant was in actual possession of the firearm at the time he tossed it in the alleyway. Despite witnessing two men fleeing, police identified Appellant as the person carrying the only firearm. Appellant was seen throwing a handgun into an alleyway and the firearm was recovered by police a short time later in the same vicinity. The trial court observed the video footage from the police body camera and rejected Appellant's suggestion that the other man present at the scene

possessed the firearm at issue. The trial court was free to believe all, some, or none of the evidence and we may not usurp that determination. For all of the foregoing reasons, we conclude that the Commonwealth provided sufficient evidence that Appellant exercised conscious dominion over the discarded firearm and, thus, he was in possession of the firearm at issue to support his three firearm convictions.

Next, Appellant contends that his convictions were against the weight of the evidence presented at trial. Appellant's Brief at 14-18. Similar to his sufficiency argument, Appellant argues "the verdict is so contrary to the evidence as to shock one's sense of justice where [Officer] Semonelle's [b]ody [c]amera does not appear to show that it was Appellant who threw the firearm … where he could not determine which of the two men who were running side by side at a distance away" possessed the firearm. *Id.* at 16. Appellant suggests that "DNA evidence was preserved from the firearm and defendant as part of the investigation" but he is unaware of the results from the evidence collected, so "this Court should remand for a new trial because the lower court abused its discretion in denying Appellant's motion for a new trial due to the weight of the evidence." *Id.* at 18.

Our standard of review is well-established:

When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A trial court may sustain a weight challenge only if the verdict is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. We defer to the trial court's decision regarding

a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

***Commonwealth v. Clemens***, 242 A.3d 659, 667 (Pa. Super. 2020) (internal citations and quotations omitted).

Moreover,

[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Beatty***, 227 A.3d 1277, 1290 (Pa. Super. 2020) (citation omitted).

Here, the trial court determined that the verdict did not shock one's sense of justice and that Appellant's weight of the evidence claim failed. Trial Court Opinion, 6/12/2025, at 5. The trial court "evaluated testimony" from the two arresting police officers, "examined the body camera footage of Officer Semonelle" and, ultimately, "found the testimony of all Commonwealth witnesses to be wholly credible" considering "[n]o contradictory testimony was proffered at trial." ***Id.*** Finally, the trial court noted that, although the Commonwealth did not analyze the DNA samples (taken from Appellant and the firearm) or subsequently enter them into evidence at trial, "nothing precluded [Appellant] from conducting independent forensic analysis" for trial

purposes.  *Id.* at 9.  However, the trial court also noted that it granted Appellant's request for an independent expert forensic DNA analysis prior to sentencing and that the expert report "indicated that the DNA analysis of the DNA found on the gun was inconclusive as it was consistent with a possible mixture of at least two contributors." *Id.* at 9-10.  The trial court noted that it did not rely upon DNA evidence in finding Appellant guilty and subsequent DNA evidence did not absolve Appellant.  *Id.*  Instead, the trial court noted that the trial evidence showed that Appellant threw "an object into an alleyway where the firearm was ultimately recovered" in an effort to evade arrest.  *Id.* at 10.

Upon review, we find that the trial court did not abuse its discretion in ruling on Appellant's weight claim.  Appellant essentially asks this Court to reassess the credibility of the witnesses and to reweigh the police body camera video footage to reach a different result. The trial court was the factfinder, however, and we will not substitute our judgment for its decision.  In light of the video footage depicting the events on the day in question, we conclude that Appellant's firearm convictions find firm support in the record.  Moreover, we discern no abuse of discretion in the trial court's ruling that Appellant's weight of the evidence claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/29/2026